KIMMEL & SILVERMAN, P.C.
Craig T. Kimmel, Esq. (*pro hac vice*)
Jacob U. Ginsburg, Esq.(*pro hac vice*)
30 E. Butler Ave.
Ambler, PA 19002
(267) 468-5374
kimmel@creditlaw.com
jginsburg@creditlaw.com
teamkimmel@creditlaw.com

BUTSCH ROBERTS & ASSOCIATES LLC
Christopher E. Roberts (*pro hac vice*)
231 S. Bemiston Avenue, Suite 260
Clayton, Missouri 63105
Phone: (314) 863-5700
CRoberts@butschroberts.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KRISTEN HALL,** *on behalf of herself and all others similarly situated,* )<br>)<br>)<br>) | **Case No.: 2:21-CV-01997-DAD-AC** |
| *Plaintiff,* ) | **SECOND AMENDED CLASS** |
| **v.** ) | **ACTION COMPLAINT AND** |
| ) | **DEMAND FOR JURY TRIAL** |
| **SMOSH PRODUCTIONS, INC., MYTHICAL ENTERTAINMENT, LLC and MYTHICAL VENTURE, INC. d/b/a "Smosh",** )<br>)<br>)<br>)<br>) | |
| *Defendants.* ) | |

- 1 -

## SECOND AMENDED COMPLAINT

Plaintiff, Kristen Hall ("Plaintiff" or "Hall)", individually, and on behalf of all others similarly situated, and demanding a trial by jury, brings this action against Defendants, Smosh Productions, Inc. (hereinafter "Smosh Production"), Mythical Entertainment, LLC ("Mythical Entertainment") and Mythical Venture, Inc. d/b/a "Smosh" ("Mythical Venture") (hereinafter collectively referred to as "Defendants" or "the Smosh Parties") for violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. §227 *et seq*,, and §302.101 of the Texas Business & Commerce Code.  In support of this Second Amended Complaint, Plaintiff asserts as follows:

## BACKGROUND:
## TELEMARKETING AND THE TCPA

1.     In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

2.     The TCPA also affords special protections for people who registered their phone numbers on the National Do Not Call Registry and nonetheless received telemarketing calls for which they did not expressly consent.

3.     Decades after the TCPA passed into law, it is still unfortunately the case that "[m]onth after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

4.     In fact, in 2021 alone, there were over ***five million complaints*** from Americans to the FTC about unwanted telemarketing calls.   Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

5.     The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, (March 28, 2019) available at: https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

///

SECOND AMENDED COMPLAINT

## THE SMOSH PARTIES MARKETING OPERATION AND THEIR TELEMARKETING TOWARD MINORS

6.      "Smosh" is an online sketch comedy and apparel enterprise, which has operated various corporate entities and had several owners in the fifteen-plus years it has been in existence. The various Smosh entities and its numerous forms of existence, are generally referred to as the "Smosh Enterprises." The Defendants named in the Second Amended Complaint, are referred to as the "Smosh Parties."

7.      Facially, the Smosh Enterprises are a business involved in sketch comedy and the creation, production and publication of online comedy videos and online retail. Both the comedy and the apparel are geared toward Smosh's adolescent fan-base.

8.      The Smosh Parties also derive profits from collecting, selling and transmitting consumer data, including data of minors under the age of 18.

9.      When marketing Smosh merchandise, the Smosh Parties engaged in "direct" telemarketing via text message and calls to phone numbers purportedly entered onto the website smosh.com.

10.      Many of the numbers to which the Smosh Parties sent marketing text messages, were assigned to subscribers who registered their phone numbers on the National Do-Not-Call Registry.

11.      A "subscriber" to a phone number must be an adult.   Under the TCPA, a "seller" must have subscriber's express written consent, or the consent of

- 4 -

an adult authorized to act on the subscriber's behalf, before calling a number on National Do-Not-Call Registry.

12.    The Smosh Parties routinely sent out marketing message to phone numbers provided by minors on the basis that said minor "consented" or "opted in" to receive those communications.

## THE PARTIES

13.    Plaintiff and putative class-representative, Kristen Hall is a natural person and adult, who at all times relevant hereto, resided in Willis, Texas

14.    Plaintiff Hall is the mother and legal guardian of a child whose information was collected by Defendants.

15.    Hall is a "person" as that term is defined by 47 U.S.C. §153(39).

16.    Upon information and belief, Defendant Smosh Production currently operates the website smosh.com, where Smosh merchandise is sold.[1]

17.    Upon information and belief, Smosh Production has recently taken over from Defendant Mythical Venture in operating the smosh.com website and sending Smosh marketing messages.

18.    Upon information and belief, Smosh Production is the successor to Smosh Dot Com, Inc.- an originally-named defendant, that has since dissolved.[2]

---

[1] This is based on the information disclosed by counsel for Smosh and Mythical, as prescribed by the Court on August 30, 2023. Doc. No. 57.

SECOND AMENDED COMPLAINT

19.     Smosh Production is a "person" as that term is defined by 47 U.S.C. §153(39).

20.     Smosh Production maintains its headquarters at 1880 Century Park East, Suite 1600, Los Angeles, California 90067.

21.     For most of the relevant time period, the Smosh enterprises were wholly owned by Mythical Entertainment.[3]

22.     Defendant Mythical Entertainment maintains its headquarters at 450 North Roxbury Drive, 8th Floor, Beverly Hills, California, 90210.

23.     Mythical Entertainment is a "person" as that term is defined by 47 U.S.C. §153(39).

24.     Mythical Venture owned and operated the website smosh.com during much of the relevant time period and was responsible for sending marketing messages during that period.

25.     Mythical Venture maintains its headquarters at 450 North Roxbury Dr., 8th Floor, Beverly Hills, California 90210.

26.     Mythical Venture is a "person" as that term is defined by 47 U.S.C. §153(39).

---

[2] According to the California Secretary of State records, former defendant Smosh Dot Com, Inc. dissolved in December 2021, shortly after the original complaint was filed.  *See* https://bizfileonline.sos.ca.gov/search/business - Smosh Dot Com, Inc.

[3] Mythical now appears to be a minority shareholder in the Smosh Enterprises.

27.    The Smosh Parties acted as a joint enterprise with overlapping roles, common ownership and common personnel.

28.    At all times relevant hereto, the Smosh Parties worked in concert.

29.    Defendants (individually and collectively) acted through their employees, agents, vendors, contractors and affiliates.

## JURISDICTION AND VENUE

30.    This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which grants this Court original jurisdiction of all civil actions arising under the laws of the United States.

31.    Furthermore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Class are in the excess of $5,000,000.00, exclusive of interest and costs.

32.    This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

33.    This Court has personal jurisdiction over Defendants, as they maintain their headquarters in the State of California.

SECOND AMENDED COMPLAINT

34.     This Action was initially filed against Smosh Dot Com, Inc., which was headquartered at 1333 Howe Ave., Suite 103, Sacramento, California 95825. That address is within this District.

35.     For those reasons, personal jurisdiction exists, and venue is proper.

**RELEVANT PROCEDURAL HISTORY**

36.     Plaintiff filed this class-action suit against Smosh Dot Com, Inc. in October 2021, which was amended shortly thereafter to add Mythical Entertainment. Doc. Nos. 1, 10.

37.     On July 12, 2022, Plaintiff's First Amended Complaint was dismissed for lack of standing, as the Court held Kristen Hall was only the "owner and subscriber" of the subject cell phone, but not its customary user.[4] Doc. No. 44.

38.     On June 30, 2023, the Ninth Circuit Court of Appeals reversed, holding Kristen Hall has standing to assert a claim for violation of the Do-Not-Call Rules by virtue of being the subscriber. Doc. No. 48.

39.     The Court of Appeals remanded the case to the District Court for litigation on the merits.

---

[4] Both Hall and her minor son used the subject phone. The phone was sometimes in Hall's possession and sometimes in her son's possession. Contrary to the Defendants' framing, there is nothing confusing or atypical about that dynamic.

SECOND AMENDED COMPLAINT

40.     On August 21, 2023, the case was reassigned to this Court. Doc. No. 53.

41.     On August 30, 2023, upon review of a joint submission by the Parties, the Court Ordered counsel for the Parties to confer regarding various matters, including the appropriate identities of the Defendants in light of Smosh Dot Com, Inc.'s dissolution. Doc. No. 57.

42.     Defense counsel identified the roles of the various Smosh/Mythical entities on September 5, 2023 and the Parties conferred over the phone on September 6, 2023.

43.     Plaintiff now files this Second Amended Complaint.

**FACTS PERTAINING TO PLAINTIFF AND THE SUBJECT PHONE**

44.     At all times pertinent hereto, Plaintiff Kristen Hall was the owner of a cellular phone, the number for which was 575-XXX-0669.

45.     Hall would at times, allow her minor son to use that phone.

46.     The aforementioned cell phone was used primarily for residential purposes.

47.     Plaintiff registered that phone number on the National Do Not Call Registry on or about November 8, 2019.

48.     Plaintiff did so to obtain solitude from invasive and irritating solicitation calls and to protect her minor son from being inundated with advertisers and data-miners.

49.     Hall did not consent to receiving telemarketing/solicitation messages from Defendants.

50.     Hall also did not authorize another adult to consent to receiving telemarketing/solicitation messages from Defendants.

51.     On information and belief, on or around November 3, 2019, Defendants obtained the personal data of Plaintiff's minor son.

52.     That personal data obtained by the Smosh Parties identified that Plaintiff's son was 13 years old at the time, and listed his telephone number as 575-XXX-0669.

53.     That personal data also identified that Plaintiff's son was a resident of Texas City, Texas.

54.     Defendants sent at least 5 text messages from the apparent phone number of (310) 299-9555 to 575-XXX-0669, soliciting Smosh merchandise.[5] The date, time and content of those messages are set forth below:

- December 25, 2019, 27:54 pm CST: "Merry Holiday to you! For all your supposed, love and memes this

---

[5] While Defendants are a joint enterprise, based on the information provided by Defendants' counsel, the party that sent the text messages was Mythical Venture.

past year, we're have (six) a sale to show our thanks! 25% SITEWIDE…";

- March 2, 2020, 2:48 pm CST: "OH HAPPY DAY!!! The try not to laugh shirt is back in stock. Buy one. Spit on your friends. Be merry. BUY HERE IF YA WANT…";

- April 24, 2020, 11:37 am CST: "Hey, thanks :) Thank you so much for 7 million Subs on SMOSH PIT!! For the next 7 hours take 20% off all SMOSH Pit Merch. Thanks for bein (six) our favorite pizza place <3…"

- April 24, 2020, 11:37 am CST: Psst. We're having a sale and y'all are the first to know. Take 20% off everything in the store using the code EARLYACCESS at checkout, eligible until 5/25pm 11:59 Pacific time…"; and

- June 29, 2020, 4:02 pm CST: "Hey friends! Get our new merch for 10% off using the code GROOVY."

55. The text messages solicited business for Defendants' merchandise store.

56. Plaintiff received and read the text messages.

57. As the subscriber and owner of that cell phone, Plaintiff found those solicitation messages to be irritating, exploitative and invasive.

58. The messages were precisely the type of communications she sought to avoid when she registered her number on the Do Not Call registry.

**THE SMOSH PARTIES CANNOT PREVAIL ON THEIR AFFIRMATIVE DEFENSE OF EXPRESS WRITTEN CONSENT**

59.    Under the TCPA, the absence of consent is not part of the plaintiff's claim, rather it is the defendant's burden to prove its affirmative defense that it had the subscriber's "express written consent."

60.    For a "seller" to meet its burden of establishing it had express written consent, it must present a written agreement with the subscriber.

61.    The FCC has long made clear the placement of the burden for consent:

> Should any question about the consent arise, the seller will bear the burden of demonstrating that a **clear and conspicuous disclosure was provided and that unambiguous consent was obtained.**

*See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act* of 1991, 27 FCC Rcd 1830 at ¶26, 32, 33 (Feb. 12, 2012) (emphasis added).

62.    Section 227(c)(1) of the TCPA protects "residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

63.    Congress prescribed the FCC to implement rules related to the Do-Not-Call Registry. *Id.*

64.    Consistent with that mandate, the FCC has clarified that 227(c) prohibits solicitation calls to a "residential subscriber" with numbers on the Do-Not-Call registry unless it has obtained "**the subscriber's prior express permission or invitation."** 47 C.F.R. § 64.1200(c)(2)(ii) (emphasis added).

65.     The FCC has also ruled that a "subscriber" must be an "adult person." 47 C.F.R. § 64.1100(h). Specifically, the term "Subscriber" is defined as "any one of the following:"

(1)     The party identified in the account records of a common carrier as responsible for payment of the telephone bill;

(2)     Any **adult person** authorized by such party to change telecommunications services or to charge services to the account; or

(3)     Any person contractually or otherwise lawfully authorized to represent such party.

47 C.F.R. § 64.1100(h) (emphasis added).

66.     In the TCPA context, a subscriber can only authorize an adult to consent to telemarketing communications in place of the subscriber. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1254 (11th Cir. 2014); *see also Harrington v. Roundpoint Mortgage Servicing Corp.,* 290 F. Supp. 3d 1306, 1317 (M.D. Fla. 2017).

67.     The Smosh Parties cannot present the express written consent of the subscriber (Hall) upon a clear and conspicuous disclosure.

68.     In a pre-litigation exchange between counsel for Plaintiff and counsel for the Defendants, on or around September 9, 2021, Defendants' in-house

counsel provided the data which led the Smosh Parties to send the aforementioned solicitation messages.[6]

69.    While the Smosh Parties were attempting to demonstrate they had the "express written consent" to send marketing messages to Hall's phone, they instead showed the Smosh Parties acquired the data of a 13 year old.

70.    Where the Smosh Parties cannot present a signed written agreement containing the express written consent of the subscriber (Hall), or the express written consent of an adult authorized by the subscriber to consent to telemarketing communications, they cannot prevail on the affirmative defense of consent.

## CLASS ALLEGATIONS

71.    Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated.  This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. commonality, typicality, and adequacy of representation.

---

[6] While the email exchange was attached as an exhibit to the First Amended Complaint, Plaintiff does not believe it necessary to include in the Second Amended Complaint.

SECOND AMENDED COMPLAINT

72.    Defendants lacked policies in place to assure they had valid consent before sending messages or making calls using an automatic telephone dialing system to a cellular phone.

73.    Accordingly, Defendants sent vast quantities of messages and placed a high volume of solicitation calls without valid consent of the subscriber.

74.    Furthermore, Defendants lack policies in place to assure they had valid consent or a pre-existing business relationship with a party of majority age before making telemarketing calls or text messages.

75.    Defendants also lack policies in place to assure that numbers that receive telemarketing calls were not registered on the Do Not Call Registry.

76.    Accordingly, Defendants sent vast quantities of messages and placed a high volume of calls to numbers listed on the Do Not Call Registry without consent.

77.    Finally, Defendants place calls to residents of Texas without being registered as a telephone solicitor with the Texas Secretary of State.

78.    Plaintiff seeks to represent the following classes:

**Do Not Call Registry Class:** For the period from four years prior to the filing of this suit until the date a class is certified, all persons in the United States who: (1) were subscribers to a telephone number; that (2) received more than one telephone call or text message from Defendants (or someone acting on their behalf) on that phone during a 12-month period; (3) whose phone numbers were listed on the Do Not Call Registry for more than 31 days at the time

- 15 -

the calls/texts were received; and

**Texas Solicitation Class:** For two years prior to the filing of this suit until the date a class is certified, all residents of Texas who received a marketing call or text message from Defendants or someone acting on its behalf) and at such time Defendants had not obtained a registration certificate from the Office of the Secretary of State.

79.     Plaintiff reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

80.     The members of the proposed classes are so numerous that joinder of all members is impracticable.   Plaintiff reasonably believes that hundreds or thousands of people have been harmed by Defendants' actions.   The names and phone numbers of the numbers of the proposed class are readily identifiable through records available to Defendants.

81.     Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

82.     Upon information and belief, Defendants have called or text messaged and continue to call and text message individuals who are registered on the National Do Not Call Registry.   It is reasonable to expect that Defendants will continue to make such calls and text messages absent this lawsuit.

83.     Upon information and belief, Defendants have and continue to place telemarketing calls and text messages without first obtaining a registration

certificate from the Office of the Secretary of State.  It is reasonable to expect that Defendants will continue to make such calls or text messages absent this lawsuit.

84.   Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members.  The questions of law and fact common to the proposed class include, but are not limited to, whether Defendants called or text messaged phone numbers that were registered on the Do Not Call Registry, whether such calls violate the TCPA, whether Defendants obtained a registration certificate from the Office of the Secretary of State before placing telemarketing calls and/or text messages, and whether such calls and/or text messages violate the Texas Business and Commerce Code.

85.   Plaintiff's claims are typical of the claims of the proposed class members because their claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

86.   Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed class.  Plaintiff's interests do not conflict with the interests of the proposed class she seeks to represent.  Plaintiff has retained lawyers who are competent and experienced in class action, TCPA litigation and consumer law.  Plaintiff's counsel has the resources to litigate this

class action, and Plaintiff and counsel are aware of their responsibilities to the putative members of the class and will discharge those duties. Plaintiff reserve the right to join other unnamed class members into this lawsuit.

87. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

88. In contrast to numerous individual claims, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

89. Questions of law and fact, particularly the propriety of calling cell phone numbers registered on the National Do Not Call Registry, placing calls to

people without first obtaining a registration certificate from the Office of the Secretary of State, predominate over questions affecting only individual members.

90.    Defendants have acted or refused to act in accordance with the relief sought by these classes, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

## Count I - Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(c)(5)
### *Do-Not-Call Claim*

91.    Plaintiff alleges by reference the allegations of the previous paragraphs as if fully stated in this Count.

92.    The TCPA provides that it is a violation of the law to place solicitation calls a residential telephone subscriber's phone number is registered on the National Do Not Call Registry more than one time "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

93.    The penalty for each call placed in violation of the TCPA's restrictions on calling cell phone numbers registered on the National Do Not Call Registry is $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

94.    In addition, the TCPA allows the Court to enjoin Defendants'

violations of the TCPA's regulations prohibiting calls to numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

95.   By sending solicitation messages to the phones of Plaintiff and the putative class members after their numbers were registered on the National Do Not Call Registry for 31 days or more, Defendants violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(5) and the TCPA's corresponding regulations.

96.   Defendants knew or should have known that Plaintiff and the putative class members had their numbers registered on the Do Not Call Registry.

97.   Defendants did not obtain valid express written consent from the subscriber or adults authorized to consent on behalf of the subscriber.

98.   Plaintiff and the putative class members are entitled to damages of $500.00 per violation for each text message sent by Defendants and up to $1,500.00 per violation if the Court finds that Defendants willfully violated the TCPA.

**Demand for Judgment**

WHEREFORE Plaintiff Kristen Hall, individually and on behalf of all others similarly situated, requests the Court grant the following relief:

a.   Enter an order against Defendants, pursuant to Federal Rule of Civil Procedure 23 *et seq*., certifying this action as a class action and appointing Plaintiff as the class

representatives;

b. Enter an order appointing Kimmel & Silverman, PC and Butsch Roberts & Associates, LLC as counsel for the class;

c. Enter judgment in favor of Plaintiff and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation, or up to $1,500 per violation if Defendants willfully violated section 227(c)(5) of the TCPA;

d. Enter a judgment in favor of Plaintiff and the putative class that enjoins Defendants from violating the TCPA's regulations prohibiting Defendants from calling numbers registered on the National Do Not Call Registry;

e. Award Plaintiff and the class all expenses of this action, and requiring Defendants to pay the costs and expenses of class notice and administration; and

f. Award Plaintiff and the class such further and other relief the Court deems just and appropriate.

### Count II – Violations of § 302.101 *et seq.* of The Texas Business & Commercial Code

99. Plaintiff alleges by reference the allegations of the previous paragraphs as if fully stated in this Count.

100. Plaintiff received text messages from Defendants on her cell phone in Texas.

101. Defendants knew that the number for the called party was associated with a Texas resident.

102. Section 302.101 of the Texas Business & Commerce Code prohibits sellers from engaging in telephone solicitation from a location in this state or to a

purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

103. Defendants violated § 302.101 of the Texas Business & Commercial Code when they engaged in continuous and repetitive telephone solicitation of Plaintiff without obtaining a registration certificate from the Office of the Secretary of State.

104. Section 302.302(a) of the Texas Business & Commerce Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation. Furthermore, Section 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

## Demand for Judgment

WHEREFORE Plaintiff Kristen Hall, individually and on behalf of all others similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendants jointly and severally, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Hall as the class representative;

b. Enter an order appointing Kimmel & Silverman, P.C. and Butsch Roberts & Associates LLC as class counsel;

c. Enter judgment in favor of Plaintiff and the class members for all damages available under Texas Commercial & Business Code, including statutory damages of $5,000 per violation;

d. Enter judgment in favor of Plaintiff and the class members enjoining Defendants from placing marketing calls before obtaining a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made;

e. Award Plaintiff and the class all expenses of this action, and requiring defendant to pay the costs and expenses of class notice and claims administration;

f. Award Plaintiff and the class members all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees; and

g. Award Plaintiff and the class members such further and other relief the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff KRISTEN HALL, and all others similarly situated demand a jury trial in this case.

Respectfully submitted,

Kimmel & Silverman, P.C.

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg Esq. (*pro hac vice*)
Craig T. Kimmel, Esq. (*pro hac vice*)
30 E. Butler Ave.
Ambler, PA 19002
(215) 540-8888 ext. 104
jginsburg@creditlaw.com
kimmel@creditlaw.com
teamkimmel@creditlaw.com

- 23 -

Butsch Roberts & Associates, LLC

*/s/ Christopher E. Roberts*
Christopher E. Roberts (*pro hac vice*)
231 S. Bemiston Avenue, Suite 260
Clayton, Missouri 63105
Phone: (314) 863-5700
CRoberts@butschroberts.com
*Attorneys for Plaintiff*

Dated: September 20, 2023

*Attorneys for Plaintiff and putative class-representative, Kristen Hall*