KIMMEL & SILVERMAN, P.C.
Craig T. Kimmel, Esq. (*pro hac vice*)
Jacob U. Ginsburg, Esq.(*pro hac vice*)
30 E. Butler Ave.
Ambler, PA 19002
(267) 468-5374
kimmel@creditlaw.com
jginsburg@creditlaw.com
teamkimmel@creditlaw.com

BUTSCH ROBERTS & ASSOCIATES LLC
Christopher E. Roberts (*pro hac vice*)
231 S. Bemiston Avenue, Suite 260
Clayton, Missouri 63105
Phone: (314) 863-5700
CRoberts@butschroberts.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| KRISTEN HALL, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>MYTHICAL VENTURE, INC. d/b/a "Smosh"<br><br>Defendant. | Case No.: 2:21-CV-01997-DAD-AC<br><br>THIRD AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |

## **THIRD AMENDED COMPLAINT**

Plaintiff, Kristen Hall ("Plaintiff" or "Hall)", individually, and on behalf of all others similarly situated, brings this action against Defendant Mythical

Venture, Inc. d/b/a "Smosh" ("Defendant" or "Smosh") for violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. §227 *et seq*.  In support of this Third Amended Complaint, Plaintiff asserts as follows:

## BACKGROUND: TELEMARKETING AND THE TCPA

1. In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

2. The TCPA also affords special protections for people who registered their phone numbers on the National Do Not Call Registry and nonetheless received telemarketing calls for which they did not expressly consent.

3. Decades after the TCPA passed into law, it is still unfortunately the case that "[m]onth after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

4. In fact, in 2021 alone, there were over ***five million complaints*** from Americans to the FTC about unwanted telemarketing calls.  Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call*

*Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

5. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, (March 28, 2019) available at: https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

### SMOSH'S MARKETING OPERATION AND THEIR TELEMARKETING TOWARD MINORS

6. "Smosh" is an online sketch comedy and apparel enterprise, which has operated various corporate entities and had several owners in the fifteen-plus years it has been in existence.

7. Smosh is involved in sketch comedy and the creation, production and publication of online comedy videos and online retail. Both the comedy and the apparel are geared toward Smosh's adolescent fan-base.

8. Smosh has also derived profits from collecting, selling and transmitting consumer data, including data of minors under the age of 18.

9. When marketing Smosh merchandise, Smosh engaged in "direct" telemarketing via text message and calls to phone numbers purportedly entered onto the website smosh.com.

10. Smosh sent marketing text messages, were assigned to subscribers who registered their phone numbers on the National Do-Not-Call Registry.

11. A "subscriber" to a phone number must be an adult.  Under the TCPA, a "seller" must have subscriber's express written consent, or the consent of an adult authorized to act on the subscriber's behalf, before calling a number on National Do-Not-Call Registry.

12. Smosh routinely sent out marketing message to phone numbers provided by minors on the basis that said minor "consented" or "opted in" to receive those communications.

## THE PARTIES

13. Plaintiff Hall is a natural person and adult, who at all times relevant hereto, resided in Willis, Texas

14. Hall is the mother and legal guardian of a child whose information was collected by Smosh.

15. Hall is a "person" as that term is defined by 47 U.S.C. §153(39).

16. Smosh owned and operated the website smosh.com during much of the relevant time period and was responsible for sending marketing messages during that period.

17. Smosh maintains its headquarters at 450 North Roxbury Dr., 8th Floor, Beverly Hills, California 90210.

18. Smosh is a "person" as that term is defined by 47 U.S.C. §153(39).

19. Smosh acted through its employees, agents, vendors, contractors and affiliates.

**JURISDICTION AND VENUE**

20. This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which grants this Court original jurisdiction of all civil actions arising under the laws of the United States.

21. Furthermore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Class are in the excess of $5,000,000.00, exclusive of interest and costs.

22. This Court has personal jurisdiction over Smosh, as it maintains its headquarters in the State of California.

THIRD AMENDED COMPLAINT

23. This Action was initially filed against the now-dissolved Smosh Dot Com, Inc., which was headquartered at 1333 Howe Ave., Suite 103, Sacramento, California 95825. That address is within this District.

24. For those reasons, personal jurisdiction exists, and venue is proper.

## RELEVANT PROCEDURAL HISTORY

25. Plaintiff filed this class-action suit against Smosh Dot Com, Inc. in October 2021, which was amended shortly thereafter to add Mythical Entertainment. Doc. Nos. 1, 10.

26. On July 12, 2022, Plaintiff's First Amended Complaint was dismissed for lack of standing, as the Court held Kristen Hall was only the "owner and subscriber" of the subject cell phone, but not its customary user.[1] Doc. No. 44.

27. On June 30, 2023, the Ninth Circuit Court of Appeals reversed, holding Kristen Hall has standing to assert a claim for violation of the Do-Not-Call Rules by virtue of being the subscriber. Doc. No. 48.

28. The Court of Appeals remanded the case to the District Court for litigation on the merits.

---

[1] Both Hall and her minor son used the subject phone. The phone was sometimes in Hall's possession and sometimes in her son's possession. Contrary to the Smosh's framing, there is nothing confusing or atypical about that dynamic.

29. On August 21, 2023, the case was reassigned to this Court. Doc. No. 53.

30. On August 30, 2023, upon review of a joint submission by the Parties, the Court Ordered counsel for the Parties to confer regarding various matters, including the appropriate identities of the Defendants in light of Smosh Dot Com, Inc.'s dissolution. Doc. No. 57.

31. Defense counsel identified the roles of the various Smosh/Mythical entities on September 5, 2023 and the Parties conferred over the phone on September 6, 2023.

32. Plaintiff then filed a Second Amended Complaint. Doc. No. 58.

33. New counsel entered an appearance for Smosh and its then co-defendants. Doc. Nos. 63 and 64.

34. The Defendants filed a motion to dismiss and strike class allegations. Doc. No. 69.

35. Where counsel for Plaintiff felt the motion to dismiss raised issues not discussed in the meet-and-confer with the original defense counsel (who remains in the case), Plaintiff proposed filing another Amended Complaint to address the issues raised in the prior motion to dismiss.

36. Defense counsel agreed to that request on November 8, 2023.

37. Accordingly, Plaintiff files this Third Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2).

**FACTS PERTAINING TO PLAINTIFF AND THE SUBJECT PHONE**

38. At all times pertinent hereto, Plaintiff Kristen Hall was the owner of a cellular phone, the number for which was 575-XXX-0669.

39. Hall would at times, allow her minor son to use that phone.

40. The aforementioned cell phone was used primarily for residential purposes.

41. Plaintiff registered that phone number on the National Do Not Call Registry on or about November 8, 2019.

42. Plaintiff did so to obtain solitude from invasive and irritating solicitation calls and to protect her minor son from being inundated with advertisers and data-miners.

43. Hall did not consent to receiving telemarketing/solicitation messages from Smosh.

44. Hall also did not authorize another adult to consent to receiving telemarketing/solicitation messages from Smosh.

45. On information and belief, on or around November 3, 2019, Smosh obtained the personal data of Plaintiff's minor son.

46. That personal data obtained by the Smosh identified that Plaintiff's son was 13 years old at the time, and listed his telephone number as 575-XXX-0669.

47. That personal data also identified that Plaintiff's son was a resident of Texas City, Texas.

48. Smosh sent at least 5 text messages from the apparent phone number of (310) 299-9555 to 575-XXX-0669, soliciting Smosh merchandise. The date, time and content of those messages are set forth below:

- December 25, 2019, 27:54 pm CST: "Merry Holiday to you! For all your supposed, love and memes this past year, we're have (six) a sale to show our thanks! 25% SITEWIDE…";
- March 2, 2020, 2:48 pm CST: "OH HAPPY DAY!!! The try not to laugh shirt is back in stock. Buy one. Spit on your friends. Be merry. BUY HERE IF YA WANT…";
- April 24, 2020, 11:37 am CST: "Hey, thanks :) Thank you so much for 7 million Subs on SMOSH PIT!! For the next 7 hours take 20% off all SMOSH Pit Merch. Thanks for bein (six) our favorite pizza place <3…"
- April 24, 2020, 11:37 am CST: Psst. We're having a sale and y'all are the first to know. Take 20% off everything in the store using the code EARLYACCESS at checkout, eligible until 5/25pm 11:59 Pacific time…"; and
- June 29, 2020, 4:02 pm CST: "Hey friends! Get our new merch for 10% off using the code GROOVY."

49. The text messages solicited business for Defendant's merchandise store.

50. Plaintiff understands Mythical Venture, Inc. d/b/a Smosh sent the text messages because the text messages promoted Smosh merchandise and Smosh's counsel has advised that Smosh is the "relevant entity" responsible for sending the text messages.

51. Accordingly, Plaintiff alleges Smosh directly sent the text messages.[2]

52. Plaintiff received and read the text messages.

53. As the subscriber and owner of that cell phone, Plaintiff found those solicitation messages to be irritating, exploitative and invasive.

54. The messages were precisely the type of communications she sought to avoid when she registered her number on the Do Not Call registry.

**SMOSH CANNOT PREVAIL ON ITS AFFIRMATIVE DEFENSE OF EXPRESS WRITTEN CONSENT**

55. Under the TCPA, the absence of consent is not part of the plaintiff's claim, rather it is the defendant's burden to prove its affirmative defense that it had the subscriber's "express written consent."

56. For a "seller" to meet its burden of establishing it had express written consent, it must present a written agreement with the subscriber.

---

[2] However, if Plaintiff learns another entity sent the messages on Smosh's behalf, then Plaintiff reserves the right to seek leave to amend to reflect as much.

57. The FCC has long made clear the placement of the burden for consent:

> Should any question about the consent arise, the seller will bear the burden of demonstrating that a **clear and conspicuous disclosure was provided and that unambiguous consent was obtained.**

*See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act* of 1991, 27 FCC Rcd 1830 at ¶26, 32, 33 (Feb. 12, 2012) (emphasis added).

58. Section 227(c)(1) of the TCPA protects "residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

59. Congress directed the FCC to implement rules related to the Do-Not-Call Registry. *Id.*

60. Consistent with that mandate, the FCC has clarified that 227(c) prohibits solicitation calls to a "residential subscriber" with numbers on the Do-Not-Call registry unless it has obtained "**the subscriber's prior express permission or invitation.**" 47 C.F.R. § 64.1200(c)(2)(ii) (emphasis added).

61. The FCC has also ruled that a "subscriber" must be an "adult person." 47 C.F.R. § 64.1100(h). Specifically, the term "Subscriber" is defined as "any one of the following:"

(1) The party identified in the account records of a common carrier as responsible for payment of the telephone bill;

(2) Any **adult person** authorized by such party to change telecommunications services or to charge services to the account; or

(3) Any person contractually or otherwise lawfully authorized to represent such party.

47 C.F.R. § 64.1100(h) (emphasis added).

62. In the TCPA context, a subscriber can only authorize an adult to consent to telemarketing communications in place of the subscriber. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1254 (11th Cir. 2014); *see also Harrington v. Roundpoint Mortgage Servicing Corp.,* 290 F. Supp. 3d 1306, 1317 (M.D. Fla. 2017).

63. Smosh cannot present the express written consent of the subscriber (Hall) upon a clear and conspicuous disclosure.

64. In a pre-litigation exchange between counsel for Plaintiff and counsel for the Defendant, on or around September 9, 2021, Smosh's in-house counsel provided the data which led Smosh to send the aforementioned solicitation messages.[3]

65. While Smosh was attempting to demonstrate it (and/or affiliated entities no longer in the case) had the "express written consent" to send marketing

---

[3] While the email exchange was attached as an exhibit to the First Amended Complaint, Plaintiff does not believe it necessary to include in the Third Amended Complaint.

messages to Hall's phone, they instead showed Smosh acquired the data of a 13 year old.

66. Where Smosh cannot present a signed written agreement containing the express written consent of the subscriber (Hall), or the express written consent of an adult authorized by the subscriber to consent to telemarketing communications, they cannot prevail on the affirmative defense of consent.

## CLASS ALLEGATIONS

67. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. commonality, typicality, and adequacy of representation.

68. Defendant's policies in place to assure it had valid consent before sending messages or making calls using an automatic telephone dialing system to a cellular phone.

69. Accordingly, Defendant sent vast quantities of messages and placed a high volume of solicitation calls without valid consent of the subscriber.

70. Furthermore, Defendant lacks policies in place to assure they had valid consent or a pre-existing business relationship with a party of majority age before making telemarketing calls or text messages.

71.  Defendant also lacks policies in place to assure that numbers that receive telemarketing calls were not registered on the Do Not Call Registry.

72.  Accordingly, Defendant sent vast quantities of messages and placed a high volume of calls to numbers listed on the Do Not Call Registry without valid and enforceable consent.

73.  Plaintiff seeks to represent the following class:

> **Do Not Call Registry Class:** For the period from four years prior to the filing of this suit until the date a class is certified, all persons in the United States who: (1) were subscribers to a telephone number; that (2) received more than one telephone call or text message from Defendant on that phone during a 12-month period; (3) whose phone numbers were listed on the Do Not Call Registry for more than 31 days at the time the calls/texts were received

74.  Plaintiff reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

75.  The members of the proposed classes are so numerous that joinder of all members is impracticable.  Plaintiff reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions.  The names and phone numbers of the numbers of the proposed class are readily identifiable through records available to Defendant.

76.  Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

77. Upon information and belief, Defendant has called or messaged and continues to call and text message individuals who are registered on the National Do Not Call Registry without valid and enforceable express written consent. It is reasonable to expect that Defendant will continue to make such calls and text messages absent this lawsuit.

78. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to, whether Defendant called or text messaged phone numbers that were registered on the Do Not Call Registry, whether a minor can provide express written consent in lieu of a "subscriber", whether Defendant required valid express written consent before sending text messages, and whether such calls and/or text messages violate the TCPA.

79. Plaintiff's claims are typical of the claims of the proposed class members because their claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

80. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class she seeks to represent. Plaintiff has

retained lawyers who are competent and experienced in class action, TCPA litigation and consumer law. Plaintiff's counsel has the resources to litigate this class action, and Plaintiff and counsel are aware of their responsibilities to the putative members of the class and will discharge those duties. Plaintiff reserves the right to join other unnamed class members into this lawsuit.

81. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

82. In contrast to numerous individual claims, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

83. Questions of law and fact, particularly the propriety of texting phone numbers registered on the National Do Not Call Registry, whether Smosh had a system in place to provide a clear and conspicuous disclosure and to obtain express written consent, whether minors can provide express written consent as a "subscriber" until section 227(c) of the TCPA, predominate over questions affecting only individual members.

84. Defendant has acted or refused to act in accordance with the relief sought by these classes, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

**Count I - Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227(c)(5)**
*Do-Not-Call Claim*

85. Plaintiff alleges by reference the allegations of the previous paragraphs as if fully stated in this Count.

86. The TCPA provides that it is a violation of the law to place solicitation calls a residential telephone subscriber's phone number is registered on the National Do Not Call Registry more than one time "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

87. The penalty for each call placed in violation of the TCPA's

restrictions on calling cell phone numbers registered on the National Do Not Call Registry is $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

88. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

89. By sending solicitation messages to the phones of Plaintiff and the putative class members after their numbers were registered on the National Do Not Call Registry for 31 days or more, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c)(5) and the TCPA's corresponding regulations.

90. Defendant knew or should have known that Plaintiff and the putative class members had their numbers registered on the Do Not Call Registry.

91. Defendant did not obtain valid express written consent from the subscriber or adults authorized to consent on behalf of the subscriber.

92. Plaintiff and the putative class members are entitled to damages of $500.00 per violation for each text message sent by Defendant and up to $1,500.00 per violation if the Court finds that Defendant willfully violated the TCPA.

**Demand for Judgment**

WHEREFORE Plaintiff Kristen Hall, individually and on behalf of all others similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23 *et seq.*, certifying this action as a class action and appointing Plaintiff as the class representative;

b. Enter an order appointing Kimmel & Silverman, PC and Butsch Roberts & Associates, LLC as counsel for the class;

c. Enter judgment in favor of Plaintiff and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation, or up to $1,500 per violation if Defendant willfully violated section 227(c)(5) of the TCPA;

d. Enter a judgment in favor of Plaintiff and the putative class that enjoins Defendant from violating the TCPA's regulations prohibiting Defendant from calling numbers registered on the National Do Not Call Registry;

e. Award Plaintiff and the class all expenses of this action, and requiring Defendant to pay the costs and expenses of class notice and administration; and

f. Award Plaintiff and the class such further and other relief the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff KRISTEN HALL, and all others similarly situated demand a jury trial in this case.

Respectfully submitted,

Kimmel & Silverman, P.C.

        */s/ Jacob U. Ginsburg*
Jacob U. Ginsburg Esq.  (*pro hac vice*)
Craig T. Kimmel, Esq.  (*pro hac vice*)
30 E. Butler Ave.
Ambler, PA 19002
(215) 540-8888 ext. 104
jginsburg@creditlaw.com
kimmel@creditlaw.com
teamkimmel@creditlaw.com

Butsch Roberts & Associates, LLC

*/s/ Christopher E. Roberts*
Christopher E. Roberts (*pro hac vice*)
231 S. Bemiston Avenue, Suite 260
Clayton, Missouri 63105
Phone: (314) 863-5700
CRoberts@butschroberts.com
*Attorneys for Plaintiff and putative class-representative, Kristen Hall*

Dated: November 13, 2023

## CERTIFICATE OF SERVICE

I, Jacob U. Ginsburg, Esq. hereby certify that I served a true and correct copy of the foregoing on all parties of record via ECF on November 13, 2023.

        */s/ Jacob U. Ginsburg*

THIRD AMENDED COMPLAINT